UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                                          Case No.: 3:10-CR-31-J-25 TEM

v.

WILLIAM MCCARTHY,

    Defendant.
_____/

## DEFENDANT'S SENTENCING MEMORANDUM

Defendant William McCarthy, by and through his undersigned attorneys, provides this Sentencing Memorandum to the Court in preparation for the sentencing hearing set for August 11, 2010. Mr. McCarthy has no objection to the PSI Guidelines calculation, but seeks a variance under 18 U.S.C. §3553(a) down to the statutory mandatory minimum sentence of five years imprisonment.

## DEFENDANT'S BACKGROUND

William McCarthy is a 57 year old man who was born in Attleboro, Massachusetts in 1953. His father died suddenly when Mr. McCarthy was 12 years old. He was orphaned two years later at age 14 when his mother also died unexpectedly at age 42. Mr. McCarthy initially lived with a married couple who were friends of the family, then lived with a man who was friends with his late father until he finished school.

Mr. McCarthy graduated from high school and shortly thereafter enlisted in the United States Air Force in 1973. He served four years of active duty between 1973-1977 and was trained in advanced radar operations, working under a top security clearance and attaining the rank of Sergeant. He then served two years in the Air Force Reserve before being honorably discharged in

January 1979. **Exhibits 1 and 2.** Mr. McCarthy was awarded the National Defense Service Award Medal and the Air Force Good Conduct Medal.

After his discharge, Mr. McCarthy went to work and was gainfully employed from 1977 - 1993 by the Cummins-Alison Company (which was bought by Recognition Equipment in 1980) as a field engineer working on computer systems. From 1993-2000, Mr. McCarthy was self-employed as a consultant and software developer, working under contract for such companies as Blue Cross/Blue Shield of Florida. Since 2000, Mr. McCarthy has lived off his accumulated earnings.

For the past two years, Mr. McCarthy has been dating Tammy Sparks, a woman of his own age whom he has known for ten years, who lives near him in Jacksonville Beach. She is the owner of Sparks and Associates, a collections firm that specializes in the transportation sector. Ms. Sparks is the third party custodian under Mr. McCarthy's conditions of release.

Mr. McCarthy has no prior criminal record and for purposes of mitigation was evaluated by Ted Shaw Ph.D, an expert with close to thirty years experience in the diagnosis, treatment, and risk assessment of sexual offenders. Dr. Shaw's CV is attached as **Exhibit 3**. Since 1998, Dr. Shaw has been a contract evaluator for civil commitment under the Florida Jimmy Ryce Act through the Department of Children and Families and has represented the State of Florida in 46 of the 53 trial proceedings he has been involved with during the past 12 years. From 2000 to 2004, Dr. Shaw was clinical supervisor for the ITM group contract for face to face sexually violent predator evaluations with the Florida Department of Children and Families. In this capacity, Dr. Shaw provided clinical consultation, training and supervision to licensed psychologists and psychiatrists serving as face to face evaluators under the Jimmy Ryce Act. Since 1998, Dr. Shaw has also been a forensic evaluator throughout the State of Florida (primarily the Eighth, Ninth, and

Fifth Circuits) providing opinions to the court regarding offender risk, dangerousness, amenability to treatment, placement requirements, and custody. Dr. Shaw has well over 50 presentations of lectures, workshops, and major papers to various professionals ranging from treating professionals to attorneys, both defense and prosecution, as well as to offender related organizations in state, national, and international venues.

Dr. Shaw conducted an in-depth clinical interview of Mr. McCarthy and requested that several testing elements be done as part of a comprehensive evaluation: psychological testing, polygraphy, and the Abel Assessment for Sexual Orientation. Based on his review of the case related documents provided by counsel, his clinical assessment, and the testing findings, Dr. Shaw will testify that Mr. McCarthy's evaluation indicates that he has a normal sexual orientation and is not a pedophile. He will also offer his opinion that Mr. McCarthy's risk for reoffending is in the very low range. Dr. Shaw's formal report will be submitted as an addendum to this memorandum.

## WHY THE COURT IS FREE TO AND SHOULD DISREGARD THE ADVISORY SENTENCING GUIDELINES RANGE

In reaching an appropriate sentence under 18 U.S.C. § 3553(a), district courts "may not presume that the Guidelines range is reasonable." *Gall v. United States*, 128 S.Ct. 586, 597 (2007). *See also Rita v. United States,* 127 S.Ct. 2456, 2465 (2007) ("the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply"); *Nelson v. United States,* 129 S.Ct. 890, 891 (2009) ("Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable"). Moreover, district courts may vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines themselves. *Kimbrough v. United States*, 128 S.Ct 558, 570 (2007). When a guideline does "not exemplify the [Sentencing] Commission's exercise of its characteristic institutional role" of careful study and empirical analysis, it is "not an abuse of discretion for a

3

district court to conclude when sentencing a particular defendant" that application of that guideline "yields a sentence 'greater than necessary' to achieve Section 3553(a)'s purposes", even in an ordinary case. *Kimbrough*, 128 S.Ct. at 575.

Numerous courts around the country have concluded within the past several years that the USSG § 2G2.2 guideline "was not based on empirical data or the sentencing expertise of the [Sentencing] Commission", *United States v. Doktor*, 2008 WL 5334121, *1 n.5 (M.D. Fla. 2008) (Presnell, J.),[1] and is therefore not worthy of deference:

- *United States v. Riley*, 2009 WL 2899896, *6 (S.D. Fla.2009) (King, J.) ("it appears that the Commission has not engaged in its traditional function of conducting careful empirical analysis in arriving at the appropriate recommended range for this type of offense" under § 2G2.2*)*;

- *United States v. Meillier*, 2009 WL 2611295, *9 (D. Minn. 2009) ("the guidelines for child pornography offenses are, to a substantial extent, driven by politics, not science*")*;

- *United States v. McElheney*, 630 F.Supp.2d 886, 891 (E.D. Tenn. 2009) ("As many other courts have noted, the child pornography Guidelines are not the product of the Sentencing Commission's professional staff and empirical evidence. [Citation omitted]. The history of the child pornography Guidelines shows the Sentencing Commission's failure to use its institutional expertise in developing the child pornography Guidelines*")*;

- *United States v. Stabell*, 2009 WL 775100, *3 (E.D. Wis. 2009) ("defendant's base offense level of 22 [under § 2G2.2] was derived not from Commission study or research, but rather an attempt to keep pace with the increased statutory penalties adopted by Congress*")*;

---

[1] That is probably the reason why 69 percent of United States district judges surveyed by the Sentencing Commission in January – March, 2010 said that the guideline range for receipt of child pornography was "too high." **Exhibit 4**.

4

- *United States v. Beiermann*, 599 F.Supp.2d 1087, 1101 (N.D. Iowa 2009) ("the prosecution identifies not one whit of empirical analysis by the Commission supporting the repeated amendments to the child pornography guidelines at Congress' behest since 1991. Rather, the principal or only reasons given by the Commission itself for each of the amendments identified by the prosecution as reflecting the Commission's exercise of its institutional expertise is that the amendment was undertaken exclusively or primarily at the behest of Congress. See U.S.S.G. Manual, App. C, amends. 31, 325, 372, 435, 436, 537, 649, and 664");

- *United States v. Phinney,* 599 F.Supp.2d 1037, 1043 (E.D. Wis. 2009) ("Based on the Commission's initial approach, which *was* based on study, defendant's guideline range [for possession of child pornography] would have been 6-12 months. But because of the changes since made, none of which exemplify the Commission's exercise of its characteristic institutional role, his range was several times that. Not only is this guideline *not* based on Commission study or expertise, it is directly contrary to the Commission's original, studied approach, and to several of its subsequent recommendations and reports. Accordingly, I concluded that the range under the 2008 guideline was worthy of little respect or deference");

- *United States v. Johnson,* 588 F.Supp.2d 997, 1003 (S.D. Iowa 2008) ("At the urging of Congress, the Sentencing Commission has amended the guidelines under § 2G2.2 on several occasions over the past two decades, recommending more severe penalties. As far as this Court can tell, these modifications do not appear to be based on any sort of empirical data, and the Court has been unable to locate any particular rationale for them beyond the general revulsion that is associated with child exploitation-related offenses.

[Citations omitted]. Thus, because the guidelines at issue in this case do not reflect the unique institutional strengths of the Sentencing Commission in that they are not based on study, empirical research and data, this Court ... 'affords them less deference than it would to empirically-grounded guidelines'");

- *United States v. Noxon,* 2008 WL 4758583, *2 (D. Kan. 2008) ("Several courts have noted that the Guidelines for child pornography cases have diverted from the empirical approach used by the Sentencing Commission for other types of crimes and, therefore, have made a variance from the Guidelines. [Citation omitted] We agree with this analysis");

- *United States v. Grinbergs,* 2008 WL 4191145, *6 (D. Neb. 2008) ("The Guidelines for child exploitation offenses were not developed under the empirical approach, but were promulgated, for the most part, in response to statutory directives", *citing* Amendments 537 and 538, 592, 615, 649, 651, and 664);

- *United States v. Ontiveros,* 2008 WL 2937539, *8 (E.D. Wis. 2008) ("I conclude that the guideline provisions relating to child pornography offenses of this nature do not reflect the kind of empirical data, national experience, and independent expertise that are characteristic of the Commission's institutional role .... Under these circumstances, I decline to give the Guidelines controlling weight");

- *United States v. Hanson,* 561 F.Supp.2d 1004, 1008 (E.D. Wis. 2008) ("To the extent that the advisory guidelines deserve continued respect from courts, that respect will be greatest where the Commission has satisfied its institutional role of relying on evidence and study to develop sound sentencing practices. This guideline simply does not represent that role, as the Commission itself acknowledged");

- *United States v. Shipley,* 560 F.Supp.2d 739, 744 (S.D. Iowa 2008) ("because the [ § 2G2.2] guidelines at issue in this case do not reflect the unique institutional strengths of the Sentencing Commission in that they are not based on study, empirical research, and data, ... this Court 'affords them less deference than it would to empirically-grounded guidelines");

- *United States v. Goldberg,* 2008 WL 4542957, *6 (N.D. Ill. 2008) ("there is reason to be skeptical concerning whether the current guidelines for the specific offense with which Goldberg is charged reflect, as originally intended, an empirical analysis by the U.S. Sentencing Commission of judicial sentencing practices. On the contrary, with respect to many sex offenses, including possession of child pornography, 'the frequent mandatory minimum legislation and specific directives to the Commission make it difficult to ... disentangle the influences of the Commission from those of Congress'", *citing* U.S. Sentencing Commission, *Fifteen Years of Guideline Sentencing: An Assessment of How Well the Federal Criminal Justice System Is Achieving the Goals of Sentencing Reform* 72-73 (2004);

- *United States v. Baird,* 580 F.Supp.2d 889, 894 (D. Neb. 2008) ("The court notes that the Guidelines for child exploitation offenses ... were not developed under the empirical approach, but were promulgated, for the most part, in response to statutory directives. See U.S.S.G. App. C, Amends. 537 & 538 (Nov. 1, 1996), 592 (Nov. 1, 2000), 615 (Nov. 1, 2001), 651 (Oct. 27, 2003), 664 (Nov. 1, 2006).... Because the Guidelines do not reflect the Commission's unique institutional strengths, the court affords them less deference that it would to empirically-grounded guidelines").

- *United States v. Grober*, 595 F.Supp.2d 382, 397-402 (D.N.J. 2008) ("for a typical downloading case ... the applicable guideline, §2G2.2, cannot be given deference and produces an unreasonable sentencing range even before considering the sentencing factors in §3553(a)" in part because "the §2G2.2 enhancements apply just about all the time and operate exponentially");

- *United States v. Raby,* 2009 WL 5173964, *6 (S.D.W.V. 2009) ("Section 2G2.2--the child pornography Guideline--is not entitled to the usual deference due the Guidelines.... [Section 2G2.2 is] not grounded in empirical analysis, but rather on statutory directive. [Citing Stabenow article] ... While I do not categorically reject the child pornography Guidelines, I do not give them the same weight that I accord other Guidelines");

- *United States v. Burns,* 2009 WL 3617448, *7 (N.D. Ill. 2009) ("a series of amendments to §2G2.2 by Congress means that an application of the Guidelines to an 'average' offender results in a sentence at or close to the statutory maximum .... This court joins those district courts in their concern about the application of §2G2.2 enhancements on policy grounds, and their conclusion that the application of these guideline enhancements does not yield a reasonable sentence in the typical case");

- *United States v. Howard,* 2010 WL 749782 (D. Neb. 2010) ("in view of the fact that the child pornography Guidelines are driven by Congressional directive, rather than grounded in any scientific, statistical, or empirical method, the advice imparted in the Guidelines is outside the Sentencing Commission's area of expertise and need not be accorded a high degree of deference by the court"); and

- *United States v. Diaz,* 2010 WL 2640630, *3 (E.D. Wis. 2010) ("the guideline is largely the product of congressional directives, some of which the Sentencing Commission

8

actively opposed, rather than Commission study and expertise. The Supreme Court has held that a sentencing judge need not defer to such a guideline").

In *United States v. Dorvee*, 694 F.3d 84, 98 (2nd Cir. 2010), the Second Circuit joined these district courts in holding that the §2G2.2 enhancements "do not exemplify the [Sentencing] Commission's exercise of its characteristic institutional role". For that reason, the Second Circuit held that district courts may vary from the advisory Guidelines range based on policy disagreements with §2G2.2. *Id.* The Second Circuit concluded that "[d]istrict courts are encouraged to take seriously the broad discretion they possess in fashioning sentences under §2G2.2--ones that can range from non-custodial sentences to the statutory maximum--bearing in mind that they are dealing with an eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results." *Id.*

As Judge James Lawrence King of the Southern District of Florida and numerous other judges have recognized, the major flaw with the §2G2.2 guideline today "is that the average defendant charts at the statutory maximum, regardless of Acceptance of Responsibility and Criminal History." *Riley*, 2009 WL 2899896 at *3, *quoting* Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines.*[2] That is because, as the Commission itself recognized, the §2G2.2 guideline contains "several specific offense characteristics which are expected to apply in almost every case", including use of a computer and number of images. Amendment 664 (Nov. 1, 2004).[3] The result is that "§2G2.2 impermissibly and illogically skews sentences for even 'average' defendants to the

---

[2] The Stabenow article is attached as **Exhibit 5.**

[3] Sentencing Commission statistics make this point clear: "In this case, for instance, defendant received enhancements of 2 levels for possession of material involving children under age twelve, an enhancement applicable in 94.8 percent of sentences under 2G2.2 in fiscal year 2009; 4 levels for possession of material involving sadistic or violent conduct, applicable in 73.4 percent of cases in 2009; 2 levels for use of a computer, applicable 97.2 percent of the time; and for number of images, applicable 96.6 percent of the time, with 63.1 percent of offenders receiving the 5 level increase this defendant did." *United States v. Diaz*, 2010 WL 2640630, *3 (E.D. Wis. 2010), citing United States Sentencing Commission, *Use of Guidelines and Specific Offense Characteristics for Fiscal Year 2009* at 36-37.

upper end of the statutory range, regardless of the particular defendant's acceptance of responsibility, criminal history, specific conduct or degree of culpability, thus blurring distinctions between least and worst offenders." *Jacob,* 2009 WL 1849942 at 9. Put another way, "strict adherence to the sentencing guidelines ... would make it difficult for the Court to consider the individualized factors that § 3553(a) requires. Stated differently, the Court would struggle to differentiate between the punishment appropriate for the most and the least egregious acts of child pornographers." *Johnson,* 588 F.Supp.2d at 1004.

### THE § 3553(a) FACTORS AND WHY THE COURT SHOULD IMPOSE A VARIANCE SENTENCE SUBSTANTIALLY LOWER THAN THE ADVISORY GUIDELINES RANGE

Under 18 U.S.C. § 3553(a), the Court "shall impose a sentence sufficient, but not greater than necessary, to comply with" the purposes listed in § 3553(a)(2). These § 3553(a) factors mandate a variance sentence in this case down to the statutory mandatory minimum sentence of five years imprisonment.

The "nature and circumstances" of Mr. McCarthy's crimes are indeed very serious since children are abused in the production of child pornography. However, "[a] possessor of child pornography is considerably less culpable than one who produces or distributes the exploitative materials and is a marginal player in the overall child exploitation scheme." *United States v. Grinsbergs,* 2008 WL 4191145, *9 (D. Neb. 2008).

The "history and characteristics" of Mr. McCarthy support a substantial variance for many reasons. First, and most importantly, "[n]ot only does [the defendant] have no significant criminal history, there is no indication in the record of abuse of ... children; no prior history of sexual offenses, let alone ones involving children; and no prior offenses such as voyeurism or loitering that might be seen as precursors to more serious sexual offenses." *Beiermann,* 599 F.Supp.2d at

1110. This is a recognized basis for a variance from the advisory Guidelines range. *United States v. LaPlante,* 361 Fed.Appx. 318, 321 (3rd Cir. 2010) (affirming district court's 36 month sentence for possession of child pornography as a variance from the advisory Guidelines range of 78-97 months based in part on expert's report that there was no evidence the defendant was a pedophile or was likely to be a pedophile and the district court's finding that the defendant had no history of actual sexual contact with children); *United States v. Grober,* 595 F.Supp.2d 382, 404 (D.N.J. 2008) (varying from advisory Guidelines range of 235-240 months to mandatory minimum sentence of 5 years imprisonment in a receipt case based in part on the fact that "there is not a shred of evidence that [defendant] harmed children by any means beyond his voyeuristic behavior"); *United States v. Goldberg,* 2008 U.S. Dist. LEXIS 35723 (N.D. Ill. April 30, 2008) (48 month sentence based on defendant not being a pedophile; guidelines were 108-120 months).

Second, Mr. McCarthy's support from his girlfriend, his family and his friends, which will be demonstrated at the sentencing hearing, demonstrate that he has "in place a solid support structure, which would assist him in re-integrating into the community on release." *United States v. Stabell,* 2009 WL 775100, *4 (E.D. Wis. 2009) (varying from 78-87 month Guidelines range for attempted distribution of child pornography to the statutory mandatory minimum sentence of 60 months). *"Such a show of support suggests that this defendant is redeemable and will have significantly greater support than usual in his efforts at rehabilitation." United States v. Beiermann,* 599 F.Supp.2d 1087, 1110 (N.D. Iowa 2009) (varying from 210-262 month Guidelines range for transporting, shipping, receiving, and possessing child pornography to 90 month sentence).

Third, Mr. McCarthy's commendable Air Force service should mitigate the sentence in this case. *United States v. Shipley,* 560 F.Supp.2d 739, 743-44 (S.D. Iowa 2008) (varying from

Guideline range of 210-240 months to 90 months for receiving child pornography based in part on defendant's Army service; "The Court further observes that the Defendant's history of honorable service to his country and community ... is indicative that a sentence of much less than the guideline will be sufficient but not greater than necessary to meet the goals of sentencing, and the Court notes that the advisory guideline calculation does not factor this history into the calculation").

A variance down to the mandatory minimum five year sentence would still provide Mr. McCarthy with needed treatment under Section 3553(a)(2)(D). *United States v. Goldberg*, 2008 WL 4542957, *8 n.4 (N.D. Ill. 2008) ("Information obtained via telephone from professionals involved in the Sexual Offender Treatment Program at the Federal Medical Center at Devens indicate that, in most cases, a sentence of 3-5 years' incarceration followed by a lengthy period of supervision (at least 5 years) optimizes the chance that in-custody treatment will achieve its aims"); *United States v. Ontiveros*, 2008 WL 2937539, *6 (E.D. Wis. 2008) ("Five years is a sufficient amount of time to receive treatment offered within the federal prison system ....") (varying from 97-120 month Guidelines range to 60-month mandatory minimum sentence for receipt of child pornography).

Furthermore, a five year sentence is all that is necessary for both specific deterrence of Mr. McCarthy and for general deterrence purposes. *United States v. Riley*, 2009 WL 289986, *7 (S.D. Fla. 2009) ("5 years in prison is a serious punishment that will adequately deter the defendant and others from committing this offense in the future"); *United States v. Howard*, 2010 WL 749782, *10 (D. Neb. 2010) ("Five years is a significant term of imprisonment for a first offender.... The

mere fact of [defendant's] prosecution and conviction will deter others from engaging in this sort of conduct. The deterrent value of any longer sentence would be marginal").[4]

On the other hand, a very substantial variance from the advisory Guidelines range in this case is necessary to avoid unwarranted sentencing disparities. *United States v. Noxon*, 2008 WL 4758583, *3 (D. Kan. 2008) ("the court would note that the Sentencing Commission's 3rd Quarterly Sentencing Update reflects a widespread practice of making a substantial downward variance in pornography cases", *citing* U.S. Sentencing Commission Preliminary Quarterly Data Report, 3rd Quarter Release, Table 12 (2008) (varying from 262-327 months Guidelines range to 144 month sentence); *United States v. McElheney*, 630 F.Supp.2d 886, 903 (E.D. Tenn. 2009) ("the statistics published by the Sentencing Commission show a widespread trend away from the Guidelines ranges suggested by USSG § 2G2.2") (varying from 135-168 month Guidelines range for receiving child pornography to 78 month sentence).[5]

## A SENTENCE WHICH IS A SUBSTANTIAL VARIANCE FROM THE GUIDELINES RANGE WILL BE UPHELD BY THE COURT OF APPEALS

The Eleventh Circuit has upheld several child pornography sentences appealed by the Government which varied substantially from the advisory Guidelines range. For example, in *United States v. Halsema,* 2006 WL 1229005 (11th Cir. 2006) (unpublished) (per curiam), the Court of Appeals affirmed as reasonable a 24-month sentence for possession of child pornography even though it was less than half of the low end of the 57-71 month Guideline range. The

---

[4] Numerous other courts have varied down to 60 month sentences in child pornography receipt cases. *United States v. Grober*, 595 F.Supp.2d 382 (D.N.J. 2008*); United States v. Hernandez*, 2010 U.S. Dist. LEXIS 58565 (E.D.N.Y. June 7, 2010*); United States v. Strayer*, 2010 U.S. Dist. LEXIS 62719 (D. Neb. June 24, 2010*); United States v. Taylor*, 2008 U.S. Dist. LEXIS 44618 (S.D.N.Y. June 2, 2008).

[5] According to the United States Sentencing Commission, from the issuance of the Supreme Court's *Kimbrough* and *Gall* decisions on December 10, 2007 until March 31, 2010, 41.0 percent of §2C2.2 sentences were below the advisory Guidelines range without a Government motion. That was the highest percentage for any guideline with more than 150 sentences imposed during this period. United States Sentencing Commission Quarterly Sentencing Updates and Fiscal Year 2008 Post-Kimbrough/Gall Data Report, *available* at http://www.ussc.gov/linktojp.htm.

Eleventh Circuit noted that the district court's belief that 24 months was "sufficient punishment" for that defendant's crime was an "appropriate consideration" under 18 U.S.C. § 3553(a). 2006 WL 1229005 at **2. The Court of Appeals also held that "[a]lthough the district court's reasons for the lesser sentence might not have supported a downward departure under the mandatory Guidelines, they are appropriate considerations under an advisory system." *Id.*

In *United States v. Gray,* 453 F.3d 1323, 1325 (11th Cir. 2006) (per curiam), the Eleventh Circuit affirmed a 72 month sentence imposed by Judge Kendall Sharp for distribution of child pornography, which exceeded the 60 month mandatory statutory minimum but also was less than half of the low end of the 151-188 month range. The Eleventh Circuit reasoned (1) that the district court properly considered the defendant's age, his prior minimal criminal record, and his medical condition, and (2) that the district court's "statements show that it believed the 72-month sentence to be reasonable." *Id.*

Most recently, in *United States v. McBride,* 511 F.3d 1293, 1298 (11th Cir. 2007), the Eleventh Circuit upheld an 84 month sentence imposed by Judge Presnell for distribution of child pornography, which exceeded the 60 month mandatory minimum but was substantially shorter than the 151-188 month Guidelines range. The Court of Appeals held that it could not conclude "that the district court committed clear error in determining that a sentence considerably less than the Sentencing Guidelines' recommended range was appropriate" because "the sentence in this case involves significant time in prison and a 10-year period of supervised release." *Id.*

## CONCLUSION

A five year minimum mandatory sentence in this case would be both reasonable and no greater than necessary given William McCarthy's lack of prior criminal record, his lack of actual sexual contact with children, his status as a non-pedophile, his Air Force record, and his support structure of family and friends.

Respectfully submitted,

/s/ Kevin J. Darken
TODD FOSTER
FBN: 0325198
tfoster@tampalawfirm.com
KEVIN J. DARKEN
FBN: 0090956
kdarken@tampalawfirm.com
ROHOM KHONSARI
FBN: 0849081
rkhonsari@tampalawfirm.com
*COHEN, FOSTER & ROMINE, P.A.*
201 E. Kennedy Blvd, Suite 1000
Tampa, FL 33602
Phone (813) 225-1655
Facsimile: (813) 225-1921
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing *Defendant's Sentencing Memorandum* has been filed with the Clerk of the Court by using the CM/ECF system and by *U.S. Mail* to: **Carol Dawson, Senior United States Probation Officer**, 300 Hogan Street, Jacksonville, Florida 32202 this 4th day of August, 2010.

/s/ Kevin J. Darken
TODD FOSTER
FBN: 0325198
tfoster@tampalawfirm.com
KEVIN J. DARKEN
FBN: 0090956
kdarken@tampalawfirm.com
ROHOM KHONSARI
FBN: 0849081
rkhonsari@tampalawfirm.com
*COHEN, FOSTER & ROMINE, P.A.*
201 E. Kennedy Blvd, Suite 1000
Tampa, FL 33602
Phone (813) 225-1655
Facsimile: (813) 225-1921
Attorneys for Defendant